# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

---

**SHARON HEWITT, ET AL.**  **CIVIL NO.: 18-955**

**VERSUS**  **JUDGE ELIZABETH ERNY FOOTE**

**3 G ENERGY SERVICES, LLC ET AL.**  **MAGISTRATE JUDGE HORNSBY**

---

### MEMORANDUM RULING

Before the Court is a motion to dismiss Plaintiffs' First Amended Complaint filed by Defendants 3G Energy Services, LLC ("3G"), UBS, LLC d/b/a Ultrabend Solutions, LLC ("UBS"), Jeremy Woodle ("Woodle"), Taso Sofikitis ("Sofikitis"), Richard Crawford ("Crawford"), Anastasios Sofikitis Revocable Living Trust ("Sofikitis Trust"), the RSC Family Trust ("RSC"), and Ridgemont Investments, LLC ("Ridgemont") (collectively, "Defendants"). [Record Document 31]. For the reasons given below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is **DENIED** as to Plaintiffs' intentional infliction of emotional distress and false-light invasion of privacy claims against Woodle, as to intentional infliction of emotional distress claim against Sofikitis brought by Plaintiff Sharon Hewitt ("Hewitt"), and as to Plaintiffs' Title VII, Louisiana Employment Discrimination Law ("LEDL"), and 42 U.S.C. § 1981a claims against 3G and UBS. The motion is **GRANTED** as to all other claims.

## I.    Background

This case arises out of the alleged sexual harassment of Hewitt and Rachel Fodale

("Fodale") (collectively, "Plaintiffs"). [Record Document 26 at 2–4]. Plaintiffs allege that while employed by 3G and UBS,[1] they were sexually harassed by their supervisors, Woodle and Sofikitis. [*Id.* at 4–5]. They further allege that Crawford, another supervisor, failed to intervene to stop the harassment and that Crawford, Woodle, Sofikitis, the Sofikitis Trust, RSC, and Ridgemont are liable as members of UBS and 3G. [*Id.* at 2–3, 5].[2]

Fodale alleges that Woodle sexually harassed her by: (1) referring to her as his "girlfriend" on multiple occasions; (2) telling other employees that he wanted to begin a sexual relationship with her; (3) telling Fodale he would send her husband out of town to provide the opportunity for that relationship; (4) texting her that she "would get lucky"; (5) asking her multiple times to go out of town with him; (6) telling her that he would take care of her and that she did not need her husband; (7) arriving at her house uninvited on several occasions while her husband was out of town; and (8) "inappropriately touch[ing] Fodale in a sexual manner." [*Id.* at 5–6].

According to Hewitt, Woodle (1) asked graphic questions about her sexual activity on

---

[1] Defendants assert that Plaintiffs were employed by 3G and not by UBS, [Record Document 31-1 at 8 n.8], but on a motion to dismiss, this Court must accept Plaintiffs' well-pleaded allegations as true, *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009) (citing *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). For purposes of this motion, then, the Court will treat Plaintiffs as employees of both companies. The exact identity of Plaintiffs' employer is best resolved at a later stage of litigation.

[2] Plaintiffs characterize each Defendant other than 3G and UBS as a member of the two LLCs. [Record Document 26 at 2–3]. Defendants dispute this allegation. [Record Document 31-3]. Nevertheless, this Court accepts Plaintiffs' allegations as true. *See Canal Breaches*, 495 F.3d at 205 (citing *Martin K. Eby Constr.*, 369 F.3d at 467). If necessary, the organizational structure of the two companies can be addressed on a motion for summary

multiple occasions; (2) touched her on the back of her leg and buttock and (on a separate occasion) on her inner thigh; (3) on multiple occasions hugged her from behind while touching her breast; (4) on multiple occasions hugged her from behind and pressed his body against hers; (5) pulled out the top of her blouse and looked down it; (6) grabbed her hand and patted his buttocks with it; (7) on multiple occasions ordered her to sit in his lap or show him her breasts; and (8) accused her multiple times of having sex with other male co-workers. [*Id.* at 6–8]. A number of these actions occurred in front of Hewitt's co-workers. [*Id.*]. Hewitt also alleges that Sofikitis participated in Woodle's invasive questioning of her sexual activities. [*Id.* at 6].

Plaintiffs seek damages for Defendants' alleged violations of Title VII and the LEDL[3] and for intentional infliction of emotional distress and invasion of privacy. [*Id.* at 9–11]. They also claim punitive damages under 42 U.S.C. § 1981a. [*Id.* at 11]. Defendants ask this Court to dismiss (1) all Defendants for failure to state a claim upon which relief can be granted; (2) all Defendants other than UBS and 3G as a result of the shield of limited liability; and (3) Crawford and the Sofikitis Trust for lack of personal jurisdiction. [Record Document 31].

---

judgment.

 [3] In their amended complaint, Plaintiffs cite to La. R.S. 23:1006 and La. R.S. 51:2231 *et seq.* as the sources for their state-law employment discrimination claim. [Record Document 26 at 9]. However, the relevant sections of title 51 establish the Louisiana Human Rights Commission ("LHRC"), which is the Louisiana analogue to the Equal Employment Opportunity Commission. La. Stat. Ann. §§ 51:2231–2265 (2012 & Supp. 2019). The act creating the LHRC does not create a substantive right to be free from discrimination, but the LEDL, which the LHRC enforces, does. *See* La. Stat. Ann. §§ 23:332, 51:2231(C), 51:2232(4). Moreover, although La. R.S. 23:1006 was repealed in 1997, it was the former location of Louisiana's employment discrimination law. Therefore, the Court construes Plaintiffs' claim as arising under the LEDL.

## II.   **Legal Standard**

In order to survive a motion to dismiss under Rule 12(b)(6),[4] a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In determining whether a complaint states a plausible claim, a court must construe the complaint in the light most favorable to the plaintiff, *see In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010), and accept as true all well-pleaded factual allegations, *see Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, this Court does not have to accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

---

[4] This Court would ordinarily evaluate personal jurisdiction before turning to other grounds for dismissal. However, because Defendants effectively concede this Court's jurisdiction over all Defendants other than Crawford and the Sofikitis Trust, [Record Document 31 at 2], this Court will be obliged to address the merits of Plaintiffs' sexual harassment and tort claims in any event.

III. <u>Analysis</u>

A. <u>Proper Defendants</u>

1. **Employment Discrimination Claims**[5]

"[E]mployment discrimination claims under Title VII . . . and the [LEDL] are analyzed under the same standard." *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 891 n.2 (5th Cir. 2012) (citing *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999); *Knapper v. Hibernia Nat'l Bank*, 2009-1036, p. 6 n.11 (La. App. 4 Cir. 9/8/10); 49 So. 3d 898, 902 n.11). "[T]itle VII does not permit the imposition of liability upon individuals unless they meet [T]itle VII's definition of 'employer.'" *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994). A Title VII "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b).[6]

This Court will first examine the liability of Crawford, Woodle, and Sofikitis in their roles as "supervisors of Plaintiffs." [Record Document 26 at 4]. Under Title VII, a person cannot be both an employee and an employer. *Grant*, 21 F.3d at 653. In order to be Plaintiffs' supervisors, Crawford, Woodle, and Sofikitis must be employees of 3G and UBS. Because they are employees, they cannot be treated as Plaintiffs' employers. Thus, Crawford,

---

[5] Although Plaintiffs assert that the sexual harassment they allegedly experienced is actionable under Article 2315, the Fifth Circuit has expressly rejected this theory. *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 380 (5th Cir. 2017) (affirming dismissal of tort action for employment discrimination "[b]ecause such a cause of action is inconsistent with the LEDL").

[6] The LEDL requires a minimum of twenty employees. La. Stat. Ann. § 23:302(2) (2010).

Woodle, and Sofikitis are not liable under Title VII or the LEDL in their supervisory capacities.

Plaintiffs have also sued Woodle, Sofikitis, Crawford, the Sofikitis Trust, Ridgemont, and RSC as "owner[s]" of 3G and UBS. [Record Document 26 at 2–3]. Because Title VII makes "employers" liable, the proper defendant in an employment discrimination suit is the entity that actually employed the plaintiff. *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002) (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Grant*, 21 F.3d at 652). Under Louisiana law, a limited liability company is independent of its constituent members. *Ogea v. Merritt*, 2013-1085, pp. 26–27 (La. 12/10/13); 130 So. 3d 888, 906. LLC members are not liable for an LLC's obligations, *id.* at p. 27; 130 So. 3d at 907, and, for that reason, a member of an LLC "is not a proper party to a proceeding by or against a limited liability company," La. Stat. Ann. § 12:1320(B)–(C) (2010). Plaintiffs' Title VII and LEDL claims are against 3G and UBS, the entities that employed Plaintiffs. Therefore, even assuming that Woodle, Crawford, Sofikitis, the Sofikitis Trust, Ridgemont, and RSC are members of both LLCs, these Defendants' ownership interests do not render them liable for 3G's and UBS's alleged misconduct in allowing Plaintiffs to be sexually harassed. *Cf. Nielsen-Allen v. Indus. Maint. Corp.*, 285 F. Supp. 2d 671, 672 (D.V.I. 2002) (reaching the same result under the Uniform Limited Liability Company Act). Therefore, the Court will dismiss all claims under Title VII or the LEDL against Woodle, Crawford, Sofikitis, the Sofikitis Trust, Ridgemont, and RSC arising out of their alleged ownership interests in 3G and UBS.

In an attempt to salvage their claim against these Defendants, Plaintiffs cite La. R.S. 12:1320(D):

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person . . . .

La. Stat. Ann. § 12:1320(D). The Louisiana Supreme Court has laid out a four-factor test to determine whether liability may be imposed against an LLC member for conducting arising out of the member's association with the LLC:

> 1) whether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.

*Ogea*, 2013-1085, p. 16; 130 So. 3d at 900–01. The common thread in these factors is that they each concern the <u>member's</u> conduct. Plaintiffs have alleged that owning membership interests in 3G and UBS makes Crawford, Sofikitis, Woodle, the Sofikitis Trust, Ridgemont, and RSC liable under Title VII and the LEDL. [Record Document 26 at 3]. Plaintiffs point to no authority, and this Court has located none, supporting the proposition that an ownership interest in an LLC that is vicariously liable for an employee's conduct renders the act of ownership a "negligent or wrongful act." Therefore, the exception that allows a person to bring suit against a member of an LLC for that member's own wrongful conduct does not allow imposition of liability on Sofikitis, Woodle, Crawford, the Sofikitis Trust, Ridgemont, and RSC in their capacity as owners of 3G and UBS.

The only proper Defendants on Plaintiffs' claims under Title VII and the LEDL are 3G and UBS, Plaintiffs' employers. All claims under these statutes against the remaining Defendants are dismissed.

### 2. Tort Claims

In addition to their employment discrimination claims, Plaintiffs allege that Defendants committed the torts of intentional infliction of emotional distress and invasion of privacy. [Record Document 26 at 10–11]. Defendants fall into three classes: owners (the Sofikitis Trust, RSC, Ridgemont, Crawford, Sofikitis, and Woodle), employees (Woodle, Sofikitis, and Crawford), and employers (3G and UBS). There is no real dispute that Woodle and Sofikitis are proper defendants in tort for their personal conduct.

The Sofikitis Trust, RSC, and Ridgemont are sued only in their capacity as members of 3G and UBS. Crawford, Sofikitis, and Woodle are sued as members of the LLCs and for their personal conduct. As discussed above, under Louisiana law Defendants' membership interests in the LLCs does not give rise to individual liability under the facts of this case. Hence, this Court cannot impute vicarious liability in tort to the Sofikitis Trust, Ridgemont, and RSC. Any tort claims against these Defendants must be dismissed. Likewise, tort claims cannot be maintained against Crawford, Sofikitis, and Woodle based on their ownership interests in 3G and UBS.

Under the Louisiana Civil Code, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code Ann. art. 2320 (2010). However, vicarious liability

attaches only when the employee's conduct is "so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974). To guide courts' evaluation of the connection between the tortious conduct and the employment relationship, the Louisiana Supreme Court has identified four factors:

> (1) whether the tortious act was primarily employment rooted;
> (2) whether the violence was reasonably incidental to the performance of the employee's duties;
> (3) whether the act occurred on the employer's premises; and
> (4) whether it occurred during the hours of employment.

*Baumeister v. Plunkett*, 95-2270, p. 4 (La. 5/21/96); 673 So. 2d 994, 996–97 (citing *LeBrane*, 292 So. 2d at 218). Here, nearly all the alleged conduct occurred at the office and during work hours. However, the remaining factors weigh strongly against finding vicarious liability.

The "reasonably incidental" factor asks a court to evaluate the extent to which the conduct complained of was a foreseeable result of the supervisor's duties. *Id.* at pp. 8–9; 673 So. 2d at 999. Although the complaint does not describe Woodle's and Sofikitis's precise responsibilities, it cannot be said that the physical contact or verbal intimacies alleged are a foreseeable product of whatever specific supervisory duties these men had in an office environment. Similarly, conduct is "primarily employment rooted" when "the purpose of serving the master's business actuates the servant to any appreciable extent." *Id.* at p. 9; 673 So. 2d at 999. Although the Louisiana Supreme Court has declined to fix a rule that sexual misconduct is always personally motivated, *id.* at p. 9; 673 So. 2d at 1000, nothing in

Plaintiffs' complaint suggests that Woodle and Sofikitis were motivated by anything other than their personal desires when they allegedly harassed Plaintiffs. Hence, 3G and UBS are not liable for the intentional torts allegedly committed by Woodle and Sofikitis.

Turning to Crawford, his allegedly tortious conduct was "fail[ing] to supervise or intervene to stop [Sofikitis] or Woodle and otherwise fail[ing] to take any action to ensure that female employees of 3G and UBS are protected from sexual harassment and/or have a clear, meaningful avenue of redress when it occurs." [Record Document 26 at 5]. Plaintiffs appear to allege that Crawford's conduct independently constitutes an intentional infliction of emotional distress. [*Id.* at 10]. However, at most, the complaint can be read to allege that Crawford negligently allowed a hostile work environment to exist. [*Id.* at 5]. If that hostile work environment existed as a result of Crawford's negligence and Crawford is a supervisory employee at 3G and UBS, that environment might expose the companies to liability under Title VII and the LEDL. The Fifth Circuit has expressly shielded an employer from liability under Article 2315 for conduct that also violates the LEDL. *See Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 380 (5th Cir. 2017). It is reasonable to extend this principle to shield a supervisor from liability for negligent supervision that created a discriminatory employment environment. Even if this principle should not be so extended, Plaintiffs have not alleged negligence as a cause of action against any Defendant. Therefore, the Court concludes that Plaintiffs have not stated a claim in tort against Crawford for his alleged failure to supervise Woodle and Sofikitis.

Thus, Plaintiffs' intentional tort claims may proceed against Woodle and Sofikitis in

their personal capacities but not in their capacities as owners of 3G and UBS. The tort claims against the other Defendants are dismissed.

## B.    Plaintiffs' Tort Claims

After clarifying the proper defendants on Plaintiffs' tort claims (i.e., Woodle and Sofikitis), the Court now turns to the related question of whether Plaintiffs have stated claims for the intentional infliction of emotional distress and the invasion of their privacy.

### 1.    Intentional Infliction of Emotional Distress

Plaintiffs allege that Woodle's and Sofikitis's conduct amounted to the intentional infliction of emotional distress. [Record Document 26 at 10]. To prevail on a claim for the intentional infliction of emotional distress, a plaintiff must prove:

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*LaBove v. Raftery*, 2000-1394, pp. 16–17 (La. 11/28/01); 802 So. 2d 566, 577 (quoting *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991)).

The Louisiana Supreme Court has suggested that claims for intentional infliction of emotional distress in the workplace require a "pattern of deliberate, repeated harassment over a period of time." *White*, 585 So. 2d at 1210. Woodle's conduct towards Fodale over two months and towards Hewitt over eight and a half months was deliberate and repeated. [Record Document 26 at 5–8]. Defendants argue, essentially, that the conduct alleged is not "extreme and outrageous." *White*, 585 So. 2d at 1209. However, the harassment experienced

by the plaintiffs in the cases Defendants cite in support of dismissal was less than that alleged by Plaintiffs here. In *McCoy v. City of Shreveport*, the plaintiff accused a co-worker of "twice throwing wadded-up paper in her face and . . . repeatedly entering her office only to stare at her and laugh in mocking derision." 492 F.3d 551, 554 (5th Cir. 2007). The plaintiff in *Wilson-Robinson v. Our Lady of the Lake Regional Medical Center, Inc.* overheard a racial slur and, after complaining, alleged that "she was ordered to meet with her supervisors, that her schedule was changed, that her supervisor questioned her tardiness, and that her coworkers avoided her." No. 10-584, 2011 WL 6046984, *4 (M.D. La. Dec. 6, 2011). *Nicholas v. Allstate Insurance Co.* concerned the manner in which a supervisor conducted a corrective review. 1999-2522, pp. 17–20 (La. 8/31/00); 765 So. 2d 1017, 1028–30. Finally, although the Fifth Circuit in *Smith v. Amedisys Inc.* granted summary judgment for the defendants in a case of intentional infliction of emotional distress arising out of workplace sexual harassment, the court did so because the plaintiff did not establish that her distress was severe. 298 F.3d at 450. Hence, none of Defendants' cases establish that Woodle's conduct was not extreme and outrageous.

Turning now to Sofikitis, Plaintiffs allege that "[o]n multiple occasions, Sofikitis . . . questioned Hewitt about her sexual activity (wanting to know if she was kinky and wanting to know if and how often she masturbated), what 'sex toys' she used, vibrators, etc." [Record Document 26 at 6]. Although this conduct is less extreme than that attributed to Woodle, Plaintiffs nevertheless have at least plausibly alleged a "pattern of deliberate, repeated harassment over a period of time." *White*, 585 So. 2d at 1210. While discovery may reveal

that Sofikitis's alleged harassment was insufficiently pervasive to constitute the intentional infliction of emotional distress, this Court declines Defendants' invitation to dismiss this claim prior to allowing the parties the opportunity to gather evidence. Nevertheless, as Fodale makes no allegations against Sofikitis, the Court will dismiss her intentional infliction of emotional distress claim against him.

This Court acknowledges that the question of whether Plaintiffs have stated a claim for intentional infliction of emotional distress is somewhat close. The Louisiana Supreme Court has at least implied that something more than sexual harassment is required to recover on this theory. *See, e.g., Bustamento v. Tucker*, 607 So. 2d 532 (La. 1992) (holding that daily sexual harassment for two years along with attempting to run the plaintiff over with a forklift constituted extreme and outrageous conduct). In particular, it is necessary that the "employer's conduct . . . be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment, or worry." *Nicholas*, 1999-2252, p. 14; 765 So. 2d at 1027 (citing *White*, 585 So. 2d at 1210). Nevertheless, the Louisiana Supreme Court has also acknowledged that "[r]eference to sexual harassment as a categorization of employer/supervisor misconduct is perhaps the most often recognized claim under a theory of intentional infliction of emotional distress." *Nicholas*, 1999-2252, p. 11 n.12; 765 So. 2d at 1025 n.12 (citing *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649 (5th Cir. 1994); *Barb v. Miles, Inc.*, 861 F. Supp. 356 (W.D. Pa. 1994)). Given that Plaintiffs have alleged that Woodle and Sofikitis engaged in pervasive sexual harassment, the Court holds that Plaintiffs have stated a claim that their conduct constituted the intentional infliction of

emotional distress. Later stages of this case to show whether Plaintiffs can marshal evidence sufficient to satisfy each element of the tort. Therefore, Hewitt's intentional infliction of emotional distress claim survives against both men and Fodale's claim survives against Woodle.

### 2.    Invasion of Privacy

Plaintiffs also allege that Woodle's and Sofikitis's behavior was an invasion of their privacy. [Record Document 26 at 10–11]. Louisiana recognizes four mechanisms by which this tort can occur: "(1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts." *Tate v. Woman's Hosp. Found.*, 2010-0425, p. 4 (La. 1/19/11); 56 So. 3d 194, 197 (citing *Jaubert v. Crowley Post-Signal, Inc.*, 375 So. 2d 1386 (La. 1979)). Plaintiffs assert claims under the last three theories. [Record Document 26 at 10–11].

Plaintiffs have alleged no situation in which Defendants intruded into a space in which Plaintiffs had a reasonable expectation of being alone; as such, they have failed to state a claim for intrusion on physical solitude. While Plaintiffs have alleged that Woodle and Sofikitis asked very inappropriate questions and that Woodle made crude remarks, [*id.* at 5–8], they have not alleged that any of these statements were factually correct; indeed, they imply that Woodle's comments were false. Hence, their claim that embarrassing private facts were disclosed must fail.

This leaves Plaintiffs' false-light claim. "To be actionable [as an invasion of privacy], a

defendant's conduct must be unreasonable and must seriously interfere with the plaintiff's privacy interest." *Spears v. McCormick & Co.,* 520 So. 2d 805, 810 (La. Ct. App. 1987). This interference occurs only where those exposed to the false-light publication understand the publication to "portray [the] plaintiff[] in an objectionable way." *Sharrif v. Am. Broadcasting Co.*, 613 So. 2d 768, 771 (La. Ct. App. 1993). However, broadcasting of the false light image is not required; oral statements to even a few people may suffice. *See Fourcade v. City of Gretna*, 598 So. 2d 415, 423 (La. Ct. App. 1992). Plaintiffs' only allegation against Sofikitis—that he asked inappropriate questions of Hewitt about her sexual behavior—is not a false-light allegation, and so this claim is dismissed as to him.

Fodale's false-light allegation is that Woodle "referred to [her] as his girlfriend" several times. [Record Document 26 at 5]. Hewitt alleges that Woodle publicly accused her of having sexual relationships with male coworkers and instructed her after a meeting not to take any the company's industrial lubricant home to use for sexual purposes. [*Id.* at 8]. "The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct." *See Jaubert*, 375 So. 2d at 1389. As Woodle had no legitimate interest in presenting Fodale as an adulteress or Hewitt as sexually promiscuous, his conduct was clearly unreasonable. Similarly, the Court has no difficulty concluding that a person has a significant privacy interest in her sexual reputation. Thus, the Court denies the motion to dismiss Plaintiffs' false-light invasion of privacy claims against Woodle.

## C.   Plaintiffs' Title VII and LEDL Claims

Title VII is not a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). To demonstrate that sexual harassment by a supervisor creates a hostile work environment, a Title VII plaintiff must ultimately show: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007)).[7]

Both Plaintiffs are women and so fall within a protected class. The alleged harassment occurred because they are female, and the manner in which the complaint describes Woodle's and Sofikitis's conduct clearly indicates that it was unwelcome. Thus, the only issue is whether the alleged harassment affected the terms and conditions of employment. *See id.* (quoting *Lauderdale*, 512 F.3d at 163). In order affect those terms and conditions, harassment must be "sufficiently severe or pervasive . . . and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 (2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). In determining whether a hostile work environment exists, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

---

[7] Plaintiffs have also raised a quid pro quo harassment claim, [Record Document 26 at 4], but Defendants analyze Plaintiffs' Title VII claim as one for a hostile work environment only. Therefore, the Court declines to decide whether Plaintiffs have adequately

utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson Postmaster Gen.,* 286 F.3d 264, 268 (5th Cir. 2002) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). The working environment must be both "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998) (citing *Harris,* 510 U.S. at 21–22).

However, to survive a motion to dismiss, a complaint only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary that a plaintiff allege every fact that she may ultimately introduce into evidence at trial, provided that she "give[s] the defendant fair notice of what [her] claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Twombly*, 550 U.S. 544). Nor is it necessary to plead all of the elements of a prima facie employment discrimination case even though she will have to produce evidence of those elements at summary judgment. *Id.* at 510–11. While *Twombly* and *Iqbal* did increase the stringency with which courts must examine the sufficiency of complaints, the Supreme Court still rejected "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570. Therefore, the operative question is whether the facts stated by Plaintiffs plausibly entitle them to relief under Title VII and the LEDL. *See id.*

---

pleaded a claim for quid pro quo sexual harassment.

### 1. Fodale

Fodale has alleged a sustained campaign by Woodle to get her to begin a sexual relationship with him. [Record Document 26 at 5–6]. This effort consisted of more than "offhand" sexual comments. *Faragher*, 524 U.S. at 788. His references to her as his girlfriend, his suggestions that she leave her husband, and his uninvited visits to her home heighten the offensiveness of his conduct. [Record Document 26 at 5–6]. While she has alleged only one instance of physical sexual contact, she has also alleged that he committed much of his other objectionable behavior multiple times. [*Id.*]. Moreover, all of the alleged misconduct occurred over a period of two months, [*id.* at 5], indicating that it was frequent. This frequency, in turn, supports a conclusion that the harassment was pervasive. This Court also notes that Fodale has alleged that Woodle was her supervisor as well as a part owner of the business that employed her. [*Id.* at 2]. A supervisor who implies that a subordinate should begin a sexual relationship with that supervisor renders the environment more hostile than would be the case were that suggestion to come from a coworker. This Court thus concludes that Fodale has stated a claim that Woodle's conduct created a hostile work environment under Title VII and the LEDL.

### 2. Hewitt

Hewitt worked under Woodle for eight and a half months. [Record Document 26 at 6]. The relatively short duration of her employment increases the frequency of the incidents she describes and so renders the harassment more pervasive. Moreover, much of Woodle's conduct appears specifically designed to be humiliating rather than merely teasing. "[P]inning

her in [a] closet" by pressing his whole body against her back and grabbing her shirt away from her chest so that he could peer down it are physical acts that by their invasion of Fodale's bodily integrity appear designed to humiliate and embarrass. [*Id.* at 7]. His verbal comments are similarly aggressive. Notably, he accused her of having sex with co-workers when she raised the issue of whether those workers would be paid. [*Id.*]. He also twice made graphic sexual comments about Hewitt in front of other co-workers, once accompanying his verbal tirade with a sexually suggestive gesture. [*Id.* at 8]. Because Rule 8(a) only requires a plausible demonstration of entitlement to relief and does not require that a sexual harassment plaintiff allege every single incident of harassment in explicit detail, the Court concludes that Fodale has stated a claim for a violation of Title VII and the LEDL.

### 3.    Defendants' Arguments

Defendants attempt to prevail on their motion by pointing to cases that Defendants assert contain facts more egregious than those alleged by Plaintiffs. [Record Document 31-1 at 13–15, 19–21]. However, these cases are distinguishable. *Paul v. Northrop Grumman Ship Systems* concerned only a single incident where the plaintiff was inappropriately touched by a co-worker. 309 F. App'x 825, 828 (5th Cir. 2009) (per curiam). In *Derouen v. Carquest Auto Parts*, the Fifth Circuit affirmed summary judgment for an employer when the employee alleged two sexually threatening comments from a customer and one incident in which a co-worker "attempted to grab her breast and later put his hand on and rubbed her thigh." 275 F.3d 42 (5th Cir. 2001) (per curiam) (unpublished table decision). Likewise, in *Gibson v. Potter*, the Fifth Circuit affirmed summary judgment where the plaintiff established only one

incident during which a supervisor touched her buttocks and made suggestive comments; her other allegations were "unsubstantiated." 264 F. App'x 397, 401 (5th Cir. 2008). The pattern of behavior Plaintiffs allege is far more sustained than the isolated incidents in *Derouen*, *Paul*, and *Gibson*.

Defendants also point to *McClinton v. Sam's East, Inc.*, in which this Court granted a motion to dismiss a sexual harassment claim. No. 11-cv-2156, 2012 WL 4483492 (W.D. La. Sept. 28, 2012). *McClinton* was brought by a *pro se* plaintiff who had been granted five opportunities to amend his complaint. *Id.* at *6. The distinction between McClinton and Plaintiffs is the frequency of the alleged misconduct. McClinton alleged seven instances of harassment over the course of two years, three of them involving his manager hugging or wrapping an arm around him in a possibly sexual manner. *Id.* at *5. Plaintiffs have alleged misconduct that was both far more frequent and far more severe than that experienced by McClinton.

Defendants' final two cases, *Hockman v. Westward Communications, LLC*, 407 F.3d 317 (5th Cir. 2004), and *Larkins v. Wal-Mart Associates, Inc.*, No. 06-462, 2008 WL 3983850 (M.D. La. Aug. 27, 2008), allege harassment from co-workers rather than from supervisors. Although the misconduct alleged in those cases has some parallels to that alleged by Plaintiffs here, the hostility generated by sexual harassment is magnified when the perpetrator is a supervisor instead of a co-worker. Because Defendants' contrary caselaw is not persuasive, Plaintiffs' LEDL and Title VII claims may proceed to the next phase of litigation.

### D. Plaintiffs' § 1981a Claims

Plaintiffs have alleged that they are entitled to punitive damages under 42 U.S.C. § 1981a. [Record Document 26 at 11]. Punitive damages are available only where a plaintiff proves that her employer acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Because the scienter requirement "focus[es] on the actor's state of mind," a plaintiff must produce evidence allowing a jury to infer that the employer was both aware of the relevant provision of Title VII and believed that it was acting unlawfully. *EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 467–68 (5th Cir. 2013) (en banc) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999)). This is a high bar, but because clearing it turns on the subjective knowledge that can be imputed to UBS and 3G, the Court believes that this issue is more appropriately resolved at a later stage of litigation. Plaintiffs are cautioned, however, that they face a "formidable burden" to establish their entitlement to punitive damages. *Id.* at 467 (quoting *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir. 2006)).

Therefore, Defendants' motion is denied as to Plaintiff's § 1981a punitive-damages claims against 3G and UBS. Nevertheless, because § 1981a provides for punitive damages against entities that violate Title VII and because the remaining Defendants are not "employers" under Title VII, all § 1981a claims against Woodle, Sofikitis, Crawford, the Sofikitis Trust, RSC, and Ridgemont are dismissed.

## IV. Conclusion

For the reasons given above, the motion to dismiss [Record Document 31] is

**GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to the claims against Woodle for intentional infliction of emotional distress and false-light invasion of privacy and as to Hewitt's intentional infliction of emotional distress claim against Sofikitis. It is also **DENIED** as to the Title VII, LEDL, and § 1981a claims against 3G and UBS. The motion is **GRANTED** as to all other claims. No claims survive against Crawford, the Sofikitis Trust, RSC, or Ridgemont; these defendants are terminated.

    **THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___4th___ day of ___June___, 2019.

                                        _____
                                        ELIZABETH ERNY FOOTE
                                        UNITED STATES DISTRICT JUDGE